William B. Federman (admitted pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

*Co-Interim Class Counsel for Plaintiffs and Putative Class*

[additional counsel listed on signature block]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| IN RE: SNAP FINANCE DATA BREACH LITIGATION | Lead Case No. 2:22-cv-00761-TS-JCB<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

   A.   DEFINITION OF THE CLASS................................................................................. 4

   B.   SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS................. 5

     1.   Cash Payments ................................................................................................ 5

     2.   Identity Theft Protection and Credit Monitoring ........................................... 6

     3.   Remedial Measures ......................................................................................... 7

     4.   Settlement Administration............................................................................... 7

     5.   Notice .............................................................................................................. 8

     6.   Exclusion and Objection ................................................................................. 9

     7.   Distribution of Benefits................................................................................... 9

     8.   Attorney's Fees, Expenses, and Service Awards ......................................... 10

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.......... 10

   A.   STANDARDS FOR PRELIMINARY APPROVAL ...................................................... 11

   B.   THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED .................... 12

     1.   Jones Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's Length ................................................................................. 12

     2.   Jones Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation................................................................................. 14

3.    Jones Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation.......................................................................................... 15

4.    Jones Factor 4 and Rule 23(e)(2)(C)(iii): The Plaintiffs and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable.................. 16

5.    Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement ........... 17

6.    Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief .......... 18

7.    Rule 23(e)(2)(C)(iv): There are No Agreements Required to Be Identified.................. 19

V.    THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION ............ 19

    A.    THE RULE 23(A) FACTORS ARE MET ........................................................................ 19

    1.    The Settlement Class is So Numerous that Joinder is Impracticable............................. 19

    2.    Common Issues Apply to All Class Members ................................................................ 20

    3.    Plaintiffs' Claims and Defenses are Typical of the Settlement Class ........................... 21

    B.    THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3)............................................. 22

    1.    Common Questions Predominate................................................................................... 22

    2.    A Class Action is the Superior Method for Adjudication ............................................. 23

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM .............. 24

VII.    CONCLUSION................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Adamson v. Bowen,*

    855 F.2d 668 (10th Cir. 1988) ................................................................................................. 21

*Amchem Prods., Inc. v. Windsor,*

    521 U.S. 591 (1997) ............................................................................................. 19, 22, 23

*Amoco Prod. Co. v. Fed. Power Comm'n,*

    465 F.2d 1350 (10th Cir. 1972) ............................................................................................. 11

*Ashley v. Reg'l Transp. Dist.,*

    2008 WL 384579 (D. Colo. Feb. 11, 2008) ......................................................................... 13

*CGC Holding Co., LLC v. Hutchens,*

    773 F.3d 1076 (10th Cir. 2014) ............................................................................................. 23

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,*

    888 F.3d 455 (10th Cir. 2017) ............................................................................................... 18

*Circle v. Jim Walter Homes, Inc.,*

    535 F.2d 583 (10th Cir. 1976) ............................................................................................... 20

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship,*

    100 F.3d 1041 (1st Cir. 1996) ............................................................................................... 13

*Desktop Direct, Inc. v. Digital Equip. Corp.,*

    993 F.2d 755 (10th Cir. 1993) ............................................................................................... 11

*DG v. Devaughn,*

    594 F.3d 1188 (10th Cir. 2010) ............................................................................................. 20

*Hammond v. The Bank of N.Y. Mellon Corp.,*

2010 WL 2643307 (S.D.N.Y. June 25, 2010) .................................................................. 14

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,

271 F. App'x 41 (2d Cir. 2008) ....................................................................................... 24

*In re Crocs, Inc. Sec. Litig.*,

No. 07-cv-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) ................... 11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

293 F.R.D. 21 (D. Me. 2013) ........................................................................................... 15

*In re Motor Fuel Temperature Sales Pracs. Litig.*,

286 F.R.D. 488 (D. Kan. 2012) ....................................................................................... 12

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,

625 F. Supp. 2d 1133 (D. Colo. 2009) ...................................................................... 14, 15

*Jones v. Nuclear Pharmacy, Inc.*,

741 F.2d 322 (10th Cir. 1984) .................................................................................... 11, 12

*Lucas v. Kmart Corp.*,

234 F.R.D. 688 (D. Colo. 2006) ............................................................................ 13, 15, 16

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,

2010 WL 5387559 (D. Colo. Dec. 22, 2010) ................................................................... 17

*Maez v. Springs Auto. Group, LLC*,

268 F.R.D. 391 (D. Colo. 2010) ...................................................................................... 21

*Marcus v. State of Kansas, Dep't of Revenue*,

209 F. Supp. 2d 1179 (D. Kan. 2002) ............................................................................. 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306 (1950) ......................................................................................................... 24

*Oppenlander v. Standard Oil Co. (Indiana)*,

    64 F.R.D. 597 (D. Colo. 1974) ................................................................. 16

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,

    313 F.R.D. 117 (D. Colo. 2016) ................................................................ 21

*Rex v. Owens ex rel. State of Okl.*,

    585 F.2d 432 (10th Cir. 1978) ................................................................. 20

*Rhodes v. Olson Assocs., P.C.*,

    308 F.R.D. 664 (D. Colo. 2015) ......................................................... 13, 16

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ................................................................... 18

*Rosenfeld v. Lenich*,

    No. 18-CV-6720-NGGPK, 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ................................ 18

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

    314 F.3d 1180 (10th Cir. 2002) ............................................................... 11

*Sackin v. TransPerfect Global, Inc.*,

    No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) ............................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ................................................................... 19, 20, 21

## **Rules**

Fed. R. Civ. P. 23 .................................................................... passim

**Treatises**

1 Newberg on Class Actions § 3:21 .............................................................................. 21

2 McLaughlin on Class Actions (8th ed. 2011) ............................................................ 14

Manual for Complex Litigation (4th ed. 2004) ....................................................... 11, 24

Plaintiffs Tracy Tanner, Tameka Montgomery, Victor Sanchez, Sterling Simeon, Monique Graves, Carolyn Sanders, Nick Peppelaar, and Tara Schulmeister (collectively, "Plaintiffs") individually and on behalf of the Settlement Class and Subclass, hereby submit this Unopposed Motion for Preliminary Approval of Settlement and Memorandum of Law in Support and request the Court preliminarily approve the Settlement, certify the Settlement Class, appoint Plaintiffs as Class Representatives, appoint M. Anderson Berry, William B. Federman, and Brian D. Flick as Co-Lead Class Counsel ("Class Counsel"), approve the notice plan, and order notice to the Class.[1]

## I.     INTRODUCTION

Plaintiffs allege that between June 23, 2022 and September 8, 2022, unauthorized third-party actors accessed personally identifiable information ("PII") stored on Defendants Snap Finance LLC's and Snap RTO LLC's (hereafter collectively the "Defendants" or "Snap") network, which included the names, Social Security numbers, driver's license numbers, state identification numbers, financial account numbers, credit files, property information, and other PII of approximately 61,302 consumers (referred to as the "Data Incident").

After the Data Incident, Snap sent notification letters to approximately 61,302 individuals, including 8,748 California residents. These notification letters were mailed or about December 2022, and notified the Plaintiffs and Class Members that unauthorized threat actors acquired information from Snap's networks that contained the PII of Plaintiffs and Class Members.

Plaintiffs received formal notice of the Data Incident and commenced multiple class action lawsuits alleging Snap failed to sufficiently protect their PII. These cases were consolidated before this Court on January 17, 2023 (ECF No. 29).

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1 (with its exhibits A–E). Citations to the Settlement Agreement will be abbreviated as "SA, § ___".

After several months of litigation and hard-fought negotiations, the Parties have agreed to a settlement that provides substantial monetary benefits and injunctive relief to the Settlement Class. Specifically, the Settlement provides monetary relief that will: (a) reimburse documented Out-of-Pocket Expenses and Losses of up to $5,000 per Class Member who incurred expenses and losses as a result of the Data Incident; (b) provide a CCPA Payment of up to $200 to California Subclass Members; and (c) provide a *Pro Rata* Cash Payment of up to $500 to Class Members. *See* SA, §§ 2.3, 2.3.1-3. The Settlement requires Class Members, including California Subclass Members, to submit claims to the Claims Administrator before the Claims Deadline. *See* SA, § 2.3.4. Additionally, all Class Members are eligible to receive credit monitoring and identity-protection services for 24 months from the date the Class Member claims the offer provided in the Notice. *See* SA, §2.4. The above payments will be paid out of a non-reversionary Settlement Fund to be established by Snap, in the amount of $1,800,000. This Fund will also pay for the cost of notice to the Settlement Class, as well as the costs of settlement administration, service awards to Plaintiffs, and attorneys' fees and expenses that may be awarded by the Court. *See* SA, § 3.3.

As detailed *infra*, the Settlement falls within the range of final judicial approval and includes a comprehensive notice plan. Snap does not oppose the relief requested in this motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Defendants are finance companies that offer direct loans and secure financing to consumers across the United States. Snap partners with merchants to offer lease-to-own options to consumers by acquiring merchandise from a retail store or website and leasing it to the consumer.[2]

According to the notice letters Snap sent to Plaintiffs and the Settlement Class Members, Snap learned on October 28, 2022, that unauthorized third-party actors had the ability to access

---

[2] *See* https://snapfinance.com/legal/financing-options (last visited August 9, 2023).

certain information stored on Snap's network. On December 1, 2022, Snap began to send notice letters to Class Members.

Each Plaintiff filed a class action lawsuit against Snap, asserting claims for relief emanating from the Data Incident. These class action lawsuits were consolidated before this Court (ECF No. 29) under the lead case *In Re: Snap Finance Data Breach Litigation,* 2:22-cv-00761-TS-JCB. In its consolidation Order, the Court appointed M. Anderson Berry of Clayeo C. Arnold, A Professional Corporation, William B. Federman of Federman & Sherwood, and Brian D. Flick of DannLaw as Interim Co-Lead Class Counsel ("Class Counsel").

On February 9, 2023, the Consolidated Class Action Complaint ("CCAC") was filed. Plaintiffs alleged causes of action against Snap for: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) invasion of privacy; (v) unjust enrichment; (vi) declaratory and injunctive relief; (vii) violation of the Illinois Consumer Fraud Act 815 Ill. Comp. Stat. §§ 505/1 *et seq.*; and (viii) violation of California's Consumer Privacy Act, Cal Civ. Code § 1798.100, *et seq.* ("CCPA"); (ix) violation of the California Customer Records Act Cal. Civ. Code §§ 1798.80, *et seq.*; and (x) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. See generally*, ECF No. 30.

Rather than committing to protracted litigation, after the CCAC was filed, counsel for the Parties began to exchange information and discuss resolving the case. The Parties exchanged Rule 408 discovery as well as detailed pre-mediation materials. On June 30, 2023, the Parties participated in a full-day mediation with experienced mediator Hon. John W. Thornton (Ret.) ("Judge Thornton"). Although the mediation lasted all day, the Parties were unable to reach a resolution. After the Parties had come to an impasse, Judge Thornton submitted a mediator's proposal for a non-reversionary settlement of $1,800,000, which the parties accepted.

Thereafter, the Parties worked diligently to negotiate the specific settlement terms, engage a proposed settlement claims administrator, negotiate and establish a proposed notice program to provide notice of the Settlement to Class Members, and draft the Settlement Agreement and its exhibits, including the proposed notices, claim form, and orders. Plaintiffs now seek preliminary approval of the Settlement Agreement.

Plaintiffs and their Counsel believe, in consideration of all the circumstances and after arms-length settlement negotiations with the Defendants, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Class Members.

### III.    THE SETTLEMENT AGREEMENT

### A.  DEFINITION OF THE CLASS

The Parties contemplate certification (for settlement purposes only) of a nationwide class defined as follows:

> All U.S. residents who: (i) provided personal identifiable information to Snap Finance LLC and/or Snap RTO LLC; and (ii) received a letter from Snap in December 2022 with notification of the Data Incident. [SA, § 1.29.]

The Settlement Subclass or California Subclass (the "Settlement Subclass" or the "Subclass") is defined as follows:

> All California residents whose PII was accessed on Defendants' systems in the Data Breach and who were sent a notice of the Data Breach. [SA, § 1.32.]

The Settlement Class and Subclass exclude: (i) Defendants and their officers or directors; (ii) the Judge(s) to whom the action is assigned and any member of the Judges' staffs or immediate family members; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. SA, §§ 1.29, 1.32.

### B. SETTLEMENT TERMS AND BENEFITS TO THE SETTLEMENT CLASS

#### 1. Cash Payments

##### a. *Reimbursement of Out-of-Pocket Losses*

Under the Settlement, Snap will reimburse out-of-pocket losses incurred as a result of the Data Incident up to $5,000 per Class Member. SA, § 2.3.1. Such out-of-pocket losses include, but are not limited to the following: (1) unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Class Member's Social Security number; (2) unreimbursed costs incurred on or after June 23, 2022, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (3) other unreimbursed expenses incurred related to any Out-of-Pocket Expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (4) other mitigative costs that were incurred on or after June 23, 2022, through the date of the Class Member's claim submission; and (5) unpaid time off work to address issues fairly traceable to the Data Incident at the actual hourly rate of that Class Member. SA, § 2.3.1(1)-(5). To receive payment, a Class Member must submit a valid claim and documentation of the expenses incurred. SA, § 2.3.1.

##### b. *CCPA Payment*

Under the Settlement Agreement, Subclass Members may submit a claim for a $200 cash payment as a result of the CCPA claim they have brought against Snap as California Residents, in addition to other settlement benefits available. SA, § 2.3.2. The CCPA payment amount may be decreased on a *pro rata* basis if insufficient funds remain in the Settlement Fund following the payment of Attorneys' Fees and Expenses, any Service Awards, the Costs of Claims Administration, the CAFA Notice, and claims for Out-of-Pocket Losses and Expenses, or if the total claims for CCPA payment exceed $200,000. *Id.*

#### c. *Pro Rata Cash Payment*

Under the Settlement Agreement, all Class Members may file a claim for a *pro rata* portion of the Settlement Fund. SA, § 2.3.3. The amount of this payment will depend on the funds remaining after the costs of Notice and Claims Administration, the costs of Credit Monitoring and Identity-Protection Services, claims for Out-of-Pocket Losses and Expenses and the CCPA Payments, and the payment of Attorneys' Fees and Expenses and any Service Awards to Plaintiffs. *Id.* In no event shall the amount of any individual *pro rata* cash payment exceed $500. *Id.*

#### d. *Cy Pres Award or Continued Residual Benefits to the Class*

In the event there is any portion of the Settlement Fund remaining after all cash payments have been paid, the Parties have agreed that they will meet and confer regarding the appropriate use of any residual funds, including the possibility for using residual funds for additional Credit Monitoring and Identity-Protection Services or whether any such funds shall be paid to one or more *cy pres* recipient, to be agreed upon by the Parties and approved by the Court, with no one *cy pres* recipient receiving more than $100,000. The Parties agree that no residual funds will revert to Defendants. *Id.*

### 2. Identity Theft Protection and Credit Monitoring

All Class Members are also eligible to receive, free of charge, 24 months of credit monitoring and identity theft protection from the date a Class Member claims the offer, with $1,000,000 in insurance. SA, § 2.3.4. This will include, at minimum: (1) identity theft insurance (with a $1,000,000 policy limit); (2) real-time credit monitoring services; and (3) access to fraud resolution agents. *Id.* Class Members will need to enroll to receive this benefit. *Id.*

### 3. Remedial Measures

The Settlement will also provide all Class Members with benefits in the form of meaningful business practice changes relating to securing personal information within Snap's servers. SA, § 2.4. These business practice commitments are designed to enhance and maintain Snap's security posture, and include: (1) using mechanisms to block suspicious website traffic; (2) conducting appropriate penetration tests and audits on Snap's systems on a periodic basis, and address any problems or issues detected thereby; (3) periodically auditing, testing, and training Snap's security personnel regarding new or modified procedures corresponding with their job responsibilities; (4) conducting periodic computer system scanning and security checks; and (5) conducting periodic internal training and education to inform Snap employees about the company's security practices. These security enhancements directly benefit the Settlement Class, whose PII remains in Snap's possession, and shall remain in place for at least two (2) years following the date this Court approves the Settlement. *Id.*

### 4. Settlement Administration

The Parties will choose a third-party Claims Administrator, a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation. The Claims Administrator will provide notice to the Class and otherwise administer the settlement in accordance with the Settlement Agreement. SA, §§ 3.2, 3.3, and 8. The costs of administration will be paid from the Settlement Fund. SA, § 1.11.

The Claims Administrator will administer the Settlement and will review Class Members' claims pursuant to the terms set forth in Section 8 of the Settlement Agreement. Class Counsel and Snap shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate

or inadequate. SA, § 8.1. The Claims Administrator's determination of whether a Settlement Claim is a Valid Claim shall be binding. *Id.*

### 5. Notice

The Notice plan is straightforward and structured to satisfy due process. Within fourteen (14) days after entry of the Preliminary Approval Order, the Defendants will provide a class list to the Claims Administrator with the last-known names, addresses, and emails (if any) of the Class Members. SA, § 3.3(a). Then, within forty-five (45) days after entry of the Preliminary Approval Order (the "Notice Deadline"), the Claims Administrator will send the Short Notice (entitled "Notice of Proposed Class Action Settlement") (attached to the Settlement Agreement as Exhibit B) to Class Members by U.S. mail or email, if available, which will advise that Class Members have ninety (90) days from the date the Short Form Notice is sent to submit a claim for benefits. SA, §§ 1.7, 1.35, 3.3. The Claims Administrator shall also have the option to send a reminder notice, based off of the Short Notice to send reminder notices to Class Members who have yet submitted a Claim Form, with such notices being sent within thirty (30) days prior to the Claims Deadline. *Id.* Any such reminder notices shall be sent via email addresses of Class Members in the possession of the Snap and via postcard notices to the members of the Settlement Class for whom the Defendants possess physical addresses but do not possess an email address. *Id.*, § 3.3(g).

In the event a Short Notice is returned to the Claims Administrator by the USPS as undeliverable and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. SA, § 3.3(d)(iii). In the event that subsequent to the first mailing of a Short Notice and at least fourteen (14) days prior to the Opt-Out Date and Objection Date a Short Notice is returned to the Claims Administrator by the USPS as undeliverable without a forwarding address,

the Claims Administrator shall perform a skip trace. SA, § 3.3(d)(iv). If the skip trace results in the discovery of an ascertainable address for the Claimant, the Claims Administrator shall re-send the Short Form Notice within seven (7) days of receiving such information. *Id.*

In addition to the mail program referenced above, the Parties have agreed that the Claims Administrator shall publish, on or before the Notice Commencement Date, the Claim Form, the Long Notice, and the Settlement Agreement on the Settlement Website which shall be maintained and updated throughout the claim period as provided for in § 3.3(c). SA, § 3.3(e).

The Parties have also agreed that the Notice substantially in the form of the Short Notice shall be published on or before the Notice Commencement Date in a general publication that reaches the entire United States, such as PR Newswire. SA, § 3.3(f).

### 6. Exclusion and Objection

Class Members who do not wish to be included in the Settlement may choose to exclude themselves by submitting a timely written request for exclusion to the Settlement Administrator. Including proof that the objector is a member of the Settlement Class. SA, § 5.1. The request must be mailed to the Claims Administrator at the address provided in the Class Notice no later than 60 days after the Notice Commencement Date, or 90 Days after the Order Granting Preliminary Approval. Additionally, any Class Member who does not submit a timely written request for exclusion from the Settlement Class may object to the settlement (no later than 60 days after the Notice Commencement Date) and may appear in person or through counsel, at his or her own expense, at the final approval hearing to present any relevant evidence or argument. *Id.*

### 7. Distribution of Benefits

Payments for all approved Claims for cash payments (*i.e.*, for reimbursement of Out-of-Pocket Losses, *Pro Rata* Cash Payments, and CCPA payments) will be issued by check or by

electronic means to each Settlement Class Member who submits a valid claim within forty-five (45) days after the Effective Date. SA, § 2.7. In the event the Settlement Fund is unable to pay all claims, the claims will be subject to *pro rata* distribution. *Id.*, § 2.3. In the event that there are funds remaining in the Settlement Fund after all payments/distributions are made, the Parties will meet and confer regarding the appropriate use of any such residual funds, including the possibility for additional Credit Monitoring and Identity-Protection Services or whether any such funds shall be paid to one or more *cy pres* recipient, to be agreed upon by the Parties and approved by the Court, with no one *cy pres* recipient receiving more than $100,000. *Id.*, § 2.3.3.

### 8. Attorney's Fees, Expenses, and Service Awards

The SA authorizes Class Counsel to seek attorney's fees in an amount not to exceed 30% of the Settlement Fund, and reimbursement of litigation expenses of an amount not to exceed $50,000.00 (subject to Court approval). SA, § 7.2. Likewise, the SA also authorizes Class Counsel to seek Service Awards in an amount not to exceed $2,500.00 to the proposed Class Representatives for their time and effort on behalf of the Settlement Class. SA, § 7.3.

## IV. **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

The Settlement provides fair, reasonable, and adequate compensation for the Settlement Class under the facts and circumstances of this case. The Settlement was achieved only after hard-fought arm's length negotiations among the Parties, including a mediation session with Judge Thornton of JAMS. The Settlement provides valuable benefits and monetary compensation to Class Members, and it confirms that Snap has made and will make meaningful changes to its data security measures of its network. Having weighed the likelihood of success and inherent risks and expense of litigation, Plaintiffs and Class Counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate[,]" and should be preliminarily approved under Rule 23(e).

## A.  STANDARDS FOR PRELIMINARY APPROVAL

Rule 23(e) provides that a proposed settlement may be approved only after a "finding that it is fair, reasonable, and adequate." Approval of a proposed settlement is "committed to the sound discretion" of the court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002) (citation omitted). However, "[i]n exercising its discretion, the trial court *must* approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (emphasis added). As a matter of public policy, the law favors and encourages settlements. *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354–55 (10th Cir. 1972); *Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993), *aff'd*, 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlements is desirable"). "Review of a proposed class action settlement generally involves two hearings." *Manual for Complex Litigation* § 21.632, at 320 (4th ed. 2004). "First, counsel submit the proposed terms of settlement and the judge makes a *preliminary* fairness evaluation." *Id.*

At the preliminary approval stage, the Court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing." *Id.* at 321. It is important to note the preliminary hearing is not a fairness hearing: "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (alteration in original) (citation omitted). For this reason, "the standards for preliminary approval of a class action settlement are not as stringent" as those applied at the final fairness hearing. *Id.* "The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious

deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'" *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal citation omitted).

The Tenth Circuit has identified four factors (the "*Jones* Factors") in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324. These factors are in addition to the factors listed under Rule 23(e)(2).[3]

## B. **THE *JONES* FACTORS AND RULE 23(e) FACTORS ARE SATISFIED**

This Settlement satisfies the factors contained in Rule 23(e)(2) and the *Jones* factors as demonstrated below. Thus, the Plaintiffs and their counsel respectfully request the Court preliminarily approve the settlement so that notice can be disseminated to Class Members.

### 1. *Jones* Factor 1 and Rule 23(e)(2)(A–B): The Settlement was Fairly and Honestly Negotiated at Arm's Length

The Courts examine "[t]he fairness of the negotiating process 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *4

---

[3] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.*

(D. Colo. Feb. 11, 2008) (citation omitted). This Settlement is the product of months of litigation and legitimate, arm's-length negotiations. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("[When] the parties have bargained at arms' length, there is a presumption in favor of the settlement"). There is no doubt that the Settlement was fairly and honestly negotiated. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) (finding that no indication of collusion weighed in favor of approval).

The Parties reached a settlement only after vigorously litigating the case. Plaintiffs initially filed five separate lawsuits against Defendants. Class Counsel successfully moved for consolidation of the actions, structured effective management of the case, drafted and filed their consolidated complaint, prepared Rule 408 discovery requests, and drafted and served a thorough settlement demand on Defendants. Only after filing the consolidated complaint did the Parties agree to engage in settlement negotiations and informal discovery exchanges. Class Counsel's vigorous litigation strategy led to the favorable Settlement obtained for the Class.

The proposed settlement was the result of hard-fought, arms-length negotiations between highly experienced counsel, with the assistance of an experienced mediator, Judge Thornton of JAMS. *See* Declaration of William B. Federman ("Federman Decl.") (attached hereto as Exhibit 2), ¶ 4. Counsel engaged in a full-day mediation, eventually agreeing in principle to the Settlement only after Judge Thornton made a mediator's proposal in an attempt to overcome the Parties' impasse in negotiations. *Id.* After considering and accepting the mediator's proposal, the Parties then worked over the subsequent month to finalize the terms of the settlement. *Id.* In sum, because the Settlement "resulted from arm's length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable" for purposes of preliminary approval. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* 2 McLaughlin on

Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

Further, in negotiating the Settlement and litigating the case, Plaintiffs had the benefit of attorneys who are highly experienced in complex class action litigation, especially data breaches. *See* Federman Decl., ¶¶ 7-9 and Exhibits A-C, thereto. As evidenced by Class Counsel's extensive experience in data breach class actions, Class Counsel are competent, well-respected, and more than capable of prosecuting this case from inception to completion. *Id.* Class Counsel zealously pursued this matter and acted in the best interests of the Class, which enabled Class Counsel to achieve this favorable Settlement. *Id.*, ¶ 5.

Thus, Rule 23(e)(B), Rule 23(e)(A), and the first *Jones* factor are met.

### 2. *Jones* Factor 2: Serious Questions of Law and Fact Create Sufficient Uncertainty in the Outcome of this Litigation

Serious questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Plaintiffs believe the claims asserted in the Consolidated Complaint are meritorious, however, Plaintiffs also acknowledge that continuing litigation poses significant risks and additional costs. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles – even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). In fact, should litigation continue, Plaintiffs will likely be tasked with surviving a motion to dismiss. Class certification is another hurdle that would have to be met – and one that has been

denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). In sum, success at trial is far from certain.

Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all. Because of this, the Parties have "reasonably conclude[d] that there are serious questions of law and fact that ... could significantly impact" the case, and thus, settlement is a favorable alternative to continued litigation. *Lucas*, 234 F.R.D. at 693–94; *see also In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1138 ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery. . .").

Thus, the second *Jones* factor has been met.

### 3. *Jones* Factor 3 and Rule 23(e)(2)(C)(i): The Settlement Provides Exceptional Immediate Relief to the Class, Outweighing the Mere Possibility of Future Relief through Protracted and Extremely Costly Litigation

Most importantly, the Settlement guarantees Class Members immediate monetary compensation as well as protection from future harm, which outweighs the mere possibility of future relief through lengthy and uncertain litigation. Class Members can easily submit a claim for their share of various cash payments, described above. SA, § 2.3.1-3. Class Members are also eligible to receive two years of identity theft protection and credit monitoring, which includes $1,000,000 in insurance. SA, § 2.3.4. This recovery is objectively substantial.

If litigation were to continue it would involve considerable time and uncertainties. Motions to dismiss, class certification, *Daubert* motions, and motions for summary judgment would all be hotly disputed, and Defendants would likely appeal any adverse verdict. Plaintiffs would face continued risk if they reach for the prospect of greater relief through further litigation. Thus, the Plaintiffs' options were not between settlement today and a final resolution before a jury sometime in the near future, but between settlement today and multiple challenges and the *potential* for final

resolution after many years of spending millions of dollars and reducing the amount of any recovery. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and internal quotation marks omitted). By reaching a favorable settlement prior to trial, Plaintiffs ensure a favorable and risk-free recovery for the Class.

Thus, Rule 23(e)(2)(C)(i) is satisfied, as well as the third *Jones* factor.

### 4. *Jones* Factor 4 and Rule 23(e)(2)(C)(iii): The Plaintiffs and their Counsel Believe the Settlement and the Proposed Award of Attorney's Fees is Fair and Reasonable

The Settlement is supported by the Plaintiffs, Defendants, and their respective counsel, who are each highly familiar with the strengths and weaknesses of this litigation. Other Class Members will have the opportunity to weigh in on the Settlement at the final fairness hearing if the Court grants preliminary approval.

Class Counsel have carefully evaluated the Settlement, and believe it provides great value to Plaintiffs and the Class. As a result of the Settlement, these benefits will be made immediately available to the Class without the delay or risk attendant with continued litigation. Indeed, there is no guarantee that the Class would secure a better outcome were the case prosecuted through trial. "Counsel's judgment as to the fairness of the agreement is entitled to considerable weight" and supports approval of the Settlement. *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *accord Lucas*, 234 F.R.D. at 695; *Rhodes*, 308 F.R.D. at 667.

Moreover, the proposed amount of attorney's fees is reasonable and fair. Plaintiffs will seek Court approval of attorneys' fees not to exceed 30% of the Settlement Fund, reimbursement of litigation expenses of an amount not to exceed $50,000.00, and service awards for Plaintiffs in the amount of $2,500 each. SA, ¶¶ 7.2, 7.3 This combined amount represents *at most*

approximately 32.78% of the $1.8 million non-reversionary Settlement Fund negotiated for the Class—not including the value of the remedial data security measures to be implemented by the Defendants. This request is well within the approvable range. *See Sackin v. TransPerfect Global, Inc.,* Case No. 1:17-cv-01469-LGS (S.D.N.Y. Dec. 14, 2018) (ECF No. 74) (awarding $715,000 in fees and $17,748.95 in expenses based on data breach settlement that offered similar benefits but to a class of less than 5,000 members); *cf. Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *3 (D. Colo. Dec. 22, 2010) (finding "approximately one third of the total economic benefit bestowed on the class" to be "the customary fee awarded to class counsel"). While Plaintiffs will fully brief their fee request by separate motion prior to Class Members' deadline to exclude themselves from or to object to the Settlement, the attorneys' fees, costs, and service awards. The anticipated requests do not present a barrier to preliminary approval.

Accordingly, the final *Jones* factor and Rule 23(e)(2)(C)(iii) are met.

### 5. Rule 23(e)(2)(D): Class Members are Treated Equitably Under the Settlement

Rule 23(e)(2)(D) requires the Court to confirm that the settlement treats all class members equitably. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses, time spent, and extraordinary losses allows Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other. *See* SA, § 2.3. While California Subclass Members may make a claim for a statutory payment of up to $200, this is justified because California residents are exclusively eligible for statutory recovery under their CCPA claims. *See* ECF No. 30 at ¶ 280 (alleging statutory damages between $100 and $750 for California Subclass pursuant to CCPA).

Class Counsel also intend to apply for Service Awards of $2,500 for the Class Representatives. SA, § 7.3. Courts overwhelmingly recognize that it is appropriate to provide

modest service awards in recognition of the efforts that plaintiffs perform on behalf of the Class—effort without which there would be no settlement. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). A service award is appropriate here given the efforts and participation of Plaintiffs in the litigation and does not constitute preferential treatment.

As evidenced by the foregoing, the allocation of the Settlement is "rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld v. Lenich*, No. 18-CV-6720-NGGPK, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021). Thus, this factor supports preliminary approval of the Settlement.

### 6. Rule 23(e)(2)(C)(ii): The Proposed Method is Effective for Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class member claims." The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of the mediator. As set forth above, the Settlement provides three forms of monetary relief: (i) reimbursement for out-of-pocket expenses and losses; (ii) compensation for California Subclass members based on the CCPA claim (CCPA Payment); and (iii) a Pro Rata Cash Payment to Class Members. SA, §§ 2.3.1-3. The Settlement also makes available to all Class Members 24 months of Identity Theft Protection and Credit Monitoring. *See* SA, § 2.3.4. Class Members need only submit a simple Claim Form in order to receive these benefits. Additionally, the Settlement provides meaningful data security commitments, which provides automatic benefit to Class Members. SA, § 2.5.

All claims will be processed by the Claims Administrator, with the oversight of Class Counsel. *See* SA, § 2.5. The Claims Administrator shall have the discretion to seek more

documentation, and if there is a defect, shall give the claimant thirty (30) days to cure the defect before rejecting the claim, in whole or in part. SA, § 2.5.2.

The proposed settlement is effective for distributing relief and merits preliminary approval.

### 7. Rule 23(e)(2)(C)(iv): There are No Agreements Required to Be Identified

Lastly, other than the Settlement Agreement, there are no agreements required to be identified under Rule 23(e)(3). As such, this factor supports preliminary approval.

## V.   THE COURT SHOULD PRELIMINARILY GRANT CLASS CERTIFICATION

At the preliminary approval stage, the Court should also determine whether it will likely be able to certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). As demonstrated below, the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

### A.   THE RULE 23(A) FACTORS ARE MET

A class action may be maintained where: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (citing Rule 23(a)).

### 1.   The Settlement Class is So Numerous that Joinder is Impracticable

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d

432 (10th Cir. 1978); see also *Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976) (finding class with 358 members to sufficiently numerous).

Here, the class surpasses the threshold requirement to establish numerosity. As the Settlement Agreement indicates, the Settlement Class exceeds 61,000 individuals. SA, § 1. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2. Common Issues Apply to All Class Members

A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc*., 564 U.S. at 350.

In this case, there are myriad common questions of law and fact, including, *inter alia*, whether Defendant owed a duty to Plaintiffs and Class Members to adequately protect their PII and to provide timely and accurate notice of the Data Incident to Plaintiffs and the Class; whether Defendants breached these duties; whether Defendants violated federal and/or state laws; whether Defendants knew or should have known that its computer and network systems were vulnerable to attack; whether Plaintiffs and Class Members suffered injury as a proximate result of Defendants' conduct or failure to act; and whether Plaintiffs and the Class are entitled to recover damages and other relief from Defendants.

Resolving the allegations surrounding Defendants' alleged conduct relating to the Data Incident will resolve issues that are "central to the validity of each of the claims in one stroke." *Id.* Accordingly, the commonality requirement is satisfied.

### 3. Plaintiffs' Claims and Defenses are Typical of the Settlement Class

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." *Id.* Plaintiffs' claims are typical of the Class under Rule 23(a)(3) because they arise from the same Data Incident and course of conduct—Defendants' alleged negligence in failing to secure sensitive data—and assert the same legal theories. *See Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988) (holding that typicality is satisfied where the claims of the class representative are "based on the same legal or remedial theory").

### 4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Class

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." *Id.* "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010)). Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *see also Amchem Prods. Inc.*, 521 U.S. at 625–26. At this stage of the approval process, there is nothing to suggest that this requirement has not been satisfied.

Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Class Members' data was all allegedly compromised by Defendants in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for the same benefits upon submitting a valid claim form. SA, § 2.3.

Further, Class Counsel has decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Federman Decl., ¶¶ 7-10. Moreover, they have put their collective experience to use in negotiating a settlement that provides meaningful relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

### B.  THE SETTLEMENT CLASS SATISFIES RULE 23(B)(3)

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds that: (i) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (ii) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. Inc.*, 521 U.S. at 618.

### 1.  Common Questions Predominate

The Plaintiffs satisfy the predominance requirement because questions common to all Class Members substantially outweigh any possible issues that are individual to the Class Members. Most notably, all Plaintiffs and Settlement Class and Subclass Members were affected by the same Data Incident and had their PII exposed to unauthorized third-party actors. Here, the same alleged course of conduct by Snap: allegedly inadequate data security, which permitted the Data Incident to occur, gives rise to all Settlement Class and Subclass Members' claims. As set forth *supra*, there

are many common issues relating to Snap's liability at the core of this action, which predominate over any individual issues. Therefore, the predominance requirement of Rule 23(b)(3) is satisfied.

### 2. A Class Action is the Superior Method for Adjudication

Finally, certification of a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. The superiority element is easily satisfied here since there are a large number of class members with small damages stemming from the same course of conduct. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014).

The Settlement Agreement and notice plan provide Class Members with the ability to obtain prompt, predictable, and certain relief. There are also well-defined administrative procedures to assure due process. This includes the right of any Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. SA, §§ 4, 5. The Settlement will also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Snap, by going forward with this case as a class action. Additionally, because the Parties seek certification for settlement purposes only, any manageability issues that could have arisen at trial are not relevant to the Court's inquiry because "the proposal is that there be no trial." *Amchem Prods. Inc.*, 521 U.S. at 593. Finally, the complexity of the claims and the high cost of individualized litigation make it unlikely that the vast majority of Class Members would be able to obtain relief without class certification.

Since the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

## VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PROGRAM

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual for Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). This standard does not require that every class member actually receive notice. *In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Pursuant to the Settlement Agreement, Snap will provide the Claims Administrator with the list of the names, last known physical addresses, and email addresses of all Class Members in its records. SA, §3.3. The Claims Administrator will then send the Short Notice (attached to the Settlement Agreement as Exhibit C) to Class Members by U.S. mail or email within forty-five (45) days of the Preliminary Approval Order. *Id*, §§ 1.35, 3.1. Class Members will have ninety (90) days from the date the Short Form Notice is sent to submit a claim for compensation. *Id*, § 1.7. In the event a Short Notice is returned to the Claims Administrator by the USPS as undeliverable and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within seven (7) days of receiving the returned Short Notice. *Id.,* § 3.3(d)(iii). In the event that subsequent to the first mailing of a Short Notice and at least fourteen (14) days prior to the Opt-Out Date and Objection Date, a Short Notice is returned to the Claims Administrator by the USPS as undeliverable and the envelope does not contain a forwarding address, the Claims Administrator shall perform a skip trace. *Id.,* § 3.3(d)(iv). If the skip trace

results in the discovery of an ascertainable address for the Claimant, the Short Notice will be re-sent within seven (7) days of receiving such information. *Id.*

The Claims Administrator will also post the Notices and other information on a designated Settlement Website, www.SnapFinanceDataSettlement.com, to which Class Members may refer for information about the Settlement, submit online Claim Forms, submit inquiries, and view important settlement documents and deadlines. SA, § 3.3(c), (e). The Settlement Website will allow Class Members to complete and submit the Claim Form Electronically through the website. *Id.*

In addition, the Parties have agreed that a notice substantially in the form of the Short Notice shall be published, by the Notice Commencement Date, in a general publication that reaches the entire United States, such as PR Newswire. SA, § 3.3(f).

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Class Members' rights and options, including the deadlines and means of submitting a Claim Form, objecting, and/or appearing at the Final Approval Hearing. *See* SA, at Exhibits A-D.

Plaintiffs submit that the Notice Program is reasonable and provides the best notice practicable under the circumstances.

## VII.  CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter an order substantially similar to the proposed Preliminary Approval Order, attached as Exhibit D to the Settlement Agreement.

Dated: September 11, 2023                    Respectfully Submitted,

*/s/William B. Federman*
William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.

Oklahoma City, Oklahoma 73120
(405) 235-1560/(405) 239-2112 (facsimile)
wbf@federmanlaw.com

M. Anderson Berry*
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com

Brian D. Flick*
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (513) 645-3488
Facsimile: (216) 373-0536
bflick@dannlaw.com

*Interim Class Counsel for the Plaintiffs and Putative
Class*

Charles H. Thronson, USB 3260
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
CThronson@parsonsbehle.com

*Liaison Counsel for the Plaintiffs and Putative
Class*

Jason M. Wucetich*
WUCETICH & KOROVILAS LLP
222 N. Pacific Coast Hwy., Suite 2000
El Segundo, CA 90245
Telephone: (310) 335-2001
Facsimile: (310) 364-5201
jason@wukolaw.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700

Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Fax: (865) 522-0049
Email: gklinger@milberg.com

*Admitted Pro Hac Vice

*Additional Counsel for Plaintiffs and Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*
William B. Federman