William B. Federman (admitted pro hac vice)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

*Co-Interim Class Counsel for Plaintiffs and Putative Class*

[additional counsel listed on signature block]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE: SNAP FINANCE DATA BREACH LITIGATION | Lead Case No. 2:22-cv-00761-TS-JCB<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |

## **TABLE OF CONTENTS**

I.    INTRODUCTION                                                                        1

II.   FACTUAL AND PROCEDURAL BACKGROUND                                  3

III.  SUMMARY OF THE SETTLEMENT                                             5

  A.    Settlement Benefits.                                                        5

    1.    Cash Payments.                                                           5

      a.    Reimbursement of Out-of-Pocket Losses                                5

      b.    Pro Rata Cash Payment.                                               6

      c.    CCPA Payment.                                                         6

    2.    Identity Theft Protection and Credit Monitoring                         6

    3.    Remedial Measures                                                       6

  B.    Fees, Costs and Service Awards.                                            7

  C.    Distribution of Benefits.                                                  7

IV.   LEGAL STANDARD                                                           8

V.    THE SETTLEMENT PROVIDES A FAIR, ADEQUATE AND REASONABLE
      RESULT FOR THE SETTLEMENT CLASS                                        9

  A.    The Settlement was Fairly and Honestly Negotiated.                        9

  B.    The Strength of the Plaintiffs' Case.                                      10

  C.    The Risk, Expense, Complexity and Likely Duration of Further Litigation.   10

  D.    The Risk of Maintaining Class Action Status Throughout the Trial.          11

  E.    The Amount Offered Under the Settlement.                                   12

  F.    The Amount of Discovery Completed.                                         14

  G.    The Experience and Views of Counsel.                                       15

  H.    Reaction of the Class Members.                                             16

VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE                    16

VII.  THE SETTLEMENT ADMINISTRATOR PROVIDED NOTICE PURSUANT TO THIS
      COURT'S PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS
      AS WELL AS RULE 23                                                          17

VIII. CONCLUSION                                                                  19

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Billittri v. Securities America, Inc.*,
   2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........................................................ 18

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
   807 F. App'x 752 (10th Cir.) ................................................................................ 17

*Gordon v. Chipotle Mexican Grill, Inc.*,
   2019 WL 6972701 (D. Colo. Dec. 16, 2019) ....................................................... 10

*Gradie*,
   2020 WL 6827783 ................................................................................................ 14

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) .............................................................................. 12

*Hillman v. Lexicon Consulting, Inc.*,
   2017 WL 10433869 (C.D. Cal. April 27, 2017) .................................................... 15

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   997 F.3d 1077 (10th Cir. 2021) ............................................................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   892 F.3d 968 (8th Cir. 2018) ................................................................................ 13

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................... 11

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) ................................................................................ 9

*Lawrence v. First Fin. Inv. Fund V, LLC*,
   2021 WL 3809083 (D. Utah Aug. 26, 2021) .......................................................... 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) .............................................................................. 8

*Smith v. Triad of Ala., LLC*,
   No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017)............. 12

*Stott v. Capital Financial Services*,
   277 F.R.D. 316, (N.D. Tex. 2011) ........................................................................ 18

*v. GrubHub, Inc.*,
   2023 U.S. Dist. LEXIS 95742 (D. Colo. June 1, 2023) ........................................ 15

**STATUES**

815 Ill. Comp. Stat. §§ 505/1 ...................................................................................... 4
Cal. Bus. & Prof. Code § 17200 .................................................................................. 4
Cal. Civ. Code §§ 1798.80............................................................................................ 4
Cal Civ. Code § 1798.100 ............................................................................................ 4

**RULES**

Fed. R. Civ. P. 23(e)(2)(A)–(D) ................................................................................... 8
Federal Rule of Civil Procedure Rule 23(e) ..................................................... 8, 9, 17, 19

Rule 23 ............................................................................................................... 9
Rule 23(a) and (b) .......................................................................................... 9
Rule 23(e)(2) .................................................................................................... 8
Rule 23(e)(3) .................................................................................................... 8

**OTHER AUTHORITIES**

11-00406 JAK(MANx),
   2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) ........................................ 11

Plaintiffs Tracy Tanner, Victor Sanchez, Tomeka Montgomery, Sterling Simeon, Monique Graves, Carolyn Saunders, Nick Peppelaar, and Tara Schulmeister (collectively, "Plaintiffs") respectfully move this Court for final approval of this class action settlement and submit this Motion and Memorandum of Law in Support. Defendant does not oppose the relief requested in this Motion and Memorandum of Law in Support.

## I.   **INTRODUCTION**

On September 18, 2023, this Court preliminarily approved a class action settlement between Plaintiffs and Defendants Snap Finance LLP and Snap RTO LLC (collectively, "Defendants" or "Snap"), and ordered that notice be given to the Class (ECF No. 47).[1] The Settlement negotiated on behalf of the Class provides for a non-reversionary common Settlement Fund of $1.8 million from which the following benefits will be provided: (i) 24 months of credit monitoring and identity-theft protection services in addition to identity theft insurance with a $1,000,000 policy limit; (ii) reimbursements up to $5,000 for ordinary out-of-pocket losses that are fairly traceable to the Data Incident; (iii) additional $200 cash payments to California Subclass Members as a result of the CCPA claim they have brought against Defendants as California Residents (up to an aggregate maximum of $200,000); and (iv) additional *pro rata* cash payments of up to $500 per person from what remains in the Settlement Fund after all other benefits are provided, in addition to the costs of notice and administration, the CAFA notice, attorneys' fees and expense reimbursements, and service awards for representative plaintiffs, are paid. In addition, as a part of the Settlement, Snap will implement and maintain substantial remedial measures concerning its data security for at least two (2) years following the date the Court approves the

---

[1] The capitalized terms used herein shall have the meanings defined in the Settlement Agreement (ECF 46-1) ("Settlement Agreement" or "S.A."), unless otherwise indicated.

Settlement. The cost of notice and administration, attorneys' fees, litigation expenses, service awards, and the requested CAFA notice will also be paid from the Settlement Fund. The Settlement is an excellent result for the Settlement Class.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement only after an extensive investigation and prolonged arm's-length negotiations. This Settlement was obtained against a well-funded defense by a respected law firm. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and Plaintiffs would face considerable risks at each stage of litigation. Despite these risks, through hard-fought negotiations and skillful work of Settlement Class Counsel, the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 95.2% of the Class, easily meeting the due process standard. *See* Declaration of William B. Federman in Support of Final Approval of Settlement ("Federman Decl."), filed contemporaneously herewith, at Exhibit 1 (Declaration of Jacob Kamenir of Notice and Settlement Administration) at ¶ 10. ("Kamenir Decl."). Individual Notice was also provided directly to Settlement Class Members via email. The Settlement Administrator reached 54,249 Settlement Class Members, or 91.01% of the Settlement Class, by email. *Id.* at ¶ 12. Of those emailed, 97.86% successfully received the email. Accordingly, the combined mail and email notice program easily meets the due process standard. *Id.*

The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a claim, and how to opt-out or object to the Settlement. *Id.* at Exhibits B and C. Out of the 60,902 Settlement Class Members who were mailed and/or emailed a Short Form notice, only one (1) sought to be excluded from the Settlement and none have objected. *Id.* at ¶ 18. This indicates strong Class Support for the Settlement. Even stronger evidence of the overwhelming support of the Class for the Settlement is the extraordinary ***7% claims rate*** that Class Counsel has achieved. *Id.* at ¶ 17.

Plaintiffs now move the Court for final approval. The Settlement satisfies all the criteria for final approval. The Court should grant final approval, and grant the Plaintiffs' request for attorneys' fees, reimbursement of litigation expenses, and service awards.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Defendants are finance companies that offer direct loans and secure financing to consumers across the United States. Snap partners with merchants to offer lease-to-own options to consumers by acquiring merchandise from a retail store or website and leasing it to the consumer.[2]

According to the notice letters Snap sent to Plaintiffs and the Settlement Class Members, Snap learned on October 28, 2022, that unauthorized third-party actors had the ability to access certain information stored on Snap's network. On December 1, 2022, Snap began to send notice letters to Class Members.

Each Plaintiff filed a class action lawsuit against Snap, asserting claims for relief emanating from the Data Incident. These class action lawsuits were consolidated before this Court (ECF No. 29) under the lead case *In Re: Snap Finance Data Breach Litigation,* 2:22-cv-00761-TS-JCB. In its consolidation Order, the Court appointed M. Anderson Berry of Clayeo C. Arnold, A

---

[2] *See* https://snapfinance.com/legal/financing-options (last visited August 9, 2023).

Professional Corporation, William B. Federman of Federman & Sherwood, and Brian D. Flick of DannLaw as Interim Co-Lead Class Counsel ("Class Counsel").

On February 9, 2023, the Consolidated Class Action Complaint ("CCAC") was filed. Plaintiffs alleged causes of action against Snap for: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) invasion of privacy; (v) unjust enrichment; (vi) declaratory and injunctive relief; (vii) violation of the Illinois Consumer Fraud Act 815 Ill. Comp. Stat. §§ 505/1 *et seq.*; (viii) violation of California's Consumer Privacy Act, Cal Civ. Code § 1798.100, *et seq.* ("CCPA"); (ix) violation of the California Customer Records Act Cal. Civ. Code §§ 1798.80, *et seq.*; and (x) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq. See generally*, ECF No. 30.

Rather than committing to protracted litigation, after the CCAC was filed, counsel for the Parties began to exchange information and discuss resolving the case. The Parties exchanged Rule 408 discovery as well as detailed pre-mediation materials. On June 30, 2023, the Parties participated in a full-day mediation with experienced mediator Hon. John W. Thornton (Ret.) ("Judge Thornton"). Although the mediation lasted all day, the Parties were unable to reach a resolution. After the Parties had come to an impasse, Judge Thornton submitted a mediator's proposal for a non-reversionary settlement of $1,800,000, which the parties accepted.

Thereafter, the Parties worked diligently to negotiate the specific settlement terms, engage a proposed settlement claims administrator, negotiate and establish a proposed notice program to provide notice of the Settlement to Class Members, and draft the Settlement Agreement and its exhibits, including the proposed notices, claim form, and orders. Plaintiffs now seek preliminary approval of the Settlement Agreement.

Plaintiffs and their Counsel believe, in consideration of all the circumstances and after arms-length settlement negotiations with Defendants, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the Class Members.

## III.    SUMMARY OF THE SETTLEMENT

The Settlement Class comprises 60,902 individuals. *See* Kamenir Decl. ¶ 6. The proposed Settlement Class is defined as follows:

> All U.S. residents who: (i) provided personal identifiable information to Snap Finance LLC and/or Snap RTO LLC; and (ii) received a letter from Snap in December 2022 with notification of the Data Incident. (SA, § 1.29).

The Settlement Subclass or "California Subclass" is defined as follow:

> All California residents whose PII was accessed on Defendants' systems in the Data Breach and who were sent a notice of the Data Breach. (SA, § 1.32).

The Settlement Class and Subclass exclude: (i) Defendants and their officers or directors; (ii) the Judge(s) to whom the action is assigned and any member of the Judges' staffs or immediate family members; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. SA §§ 1.29, 1.32.

### A.  Settlement Benefits.

Pursuant to the Settlement Agreement, Snap has established a substantial non-reversionary Settlement Fund of $1,800,000.00. In addition, the Settlement compels Snap to implement remedial measures that will help protect Class Members from future data security incidents.

#### 1.  Cash Payments.

##### a.  Reimbursement of Out-of-Pocket Losses

Under the Settlement, Snap will reimburse valid claims for out-of-pocket losses incurred because of, and fairly traceable to, the Data Incident up to $5,000 per Class Member. SA, § 2.3.1.

A claim for reimbursement for out-of-pocket losses may be combined with a claim for *Pro Rata* Payment, CCPA Payment, and Credit Monitoring and Identity-Protection Services. *Id.*, § 2.3

### b. Pro Rata Cash Payment.

All Class Members are also eligible to receive a *pro rata* portion of the Settlement Fund. SA, § 2.3.3. The amount of this payment will depend on the funds remaining after the costs of Notice and Claims Administration, the costs of Credit Monitoring and Identity-Protection Services, claims for Out-of-Pocket Losses and Expenses, the CCPA Payments, and the payment of Attorneys' Fees, Expenses and any Service Awards to Plaintiffs. *Id.* In no event shall the amount of any individual *pro rata* cash payment exceed $500. *Id.*

### c. CCPA Payment.

Under the Settlement Agreement, California Subclass Members may submit a claim for a $200 cash payment, subject to *pro rata* reduction, for the CCPA claim they brought against Snap as California Residents, in addition to other settlement benefits available. SA, § 2.3.2.

### 2. Identity Theft Protection and Credit Monitoring

All Class Members are also eligible to receive, free of charge, 24 months of credit monitoring and identity theft protection from the date a Class Member claims the offer, with $1,000,000 in insurance. SA, § 2.3.4. This will include, at minimum: (1) identity theft insurance (with a $1,000,000 policy limit); (2) real-time credit monitoring services; and (3) access to fraud resolution agents. *Id.* Class Members will need to enroll to receive this benefit. *Id.*

### 3. Remedial Measures

The Settlement will also provide all Class Members with benefits in the form of meaningful business practice changes relating to securing personal information within Snap's servers. SA, § 2.4. These business practice commitments are designed to enhance and maintain Snap's security

posture, and include: (1) using mechanisms to block suspicious website traffic; (2) conducting appropriate penetration tests and audits on Snap's systems on a periodic basis, and address any problems or issues detected thereby; (3) periodically auditing, testing, and training Snap's security personnel regarding new or modified procedures corresponding with their job responsibilities; (4) conducting periodic computer system scanning and security checks; and (5) conducting periodic internal training and education to inform Snap employees about the company's security practices. These security enhancements directly benefit the Settlement Class, whose PII remains in Snap's possession, and shall remain in place for at least two (2) years following the date this Court approves the Settlement. *Id.*

### B. Fees, Costs and Service Awards.

The Settlement Agreement also calls for a reasonable service award to each Representative Plaintiff in the amount of $2,500, subject to Court approval, to be paid from the Settlement Fund. (SA, §§ 7.3, and 7.5). The Parties agreed that Class Counsel would request no more than thirty percent (30%) of the Settlement Fund with reimbursement of documented costs and expenses of an amount not to exceed $50,000.00. (SA, § 7.2). Pursuant to the terms of the Agreement, Settlement Class Counsel filed their Unopposed Motion for Attorney Fees Costs, Expenses and Service Awards to Class Representatives on December 4, 2023 (ECF No. 48). There has been no objection to the attorneys' fees, expenses, or service award requests.

The Settlement Fund will also be used to pay the costs of notice and claims administration. The estimated cost of completion is $98,673.00. *See* Kamenir Decl, at ¶ 20.

### C. Distribution of Benefits.

Payments for all approved Claims for cash payments (*i.e.*, for reimbursement of Out-of-Pocket Losses, *Pro Rata* Cash Payments, and CCPA payments) will be issued by check or by

electronic means to each Settlement Class Member who submits a valid claim within forty-five (45) days after the Effective Date. SA, § 2.7. In the event the Settlement Fund is unable to pay all claims, the claims will be subject to *pro rata* distribution. *Id.*, § 2.3.  In the event that there are funds remaining in the Settlement Fund after all payments/distributions are made, the Parties will meet and confer regarding the appropriate use of any such residual funds, including the possibility for additional Credit Monitoring and Identity-Protection Services or whether any such funds shall be paid to one or more *cy pres* recipient, to be agreed upon by the Parties and approved by the Court, with no one *cy pres* recipient receiving more than $100,000. *Id.*, § 2.3.3.

## IV.   <u>LEGAL STANDARD</u>

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)–(iv).

In the Tenth Circuit, approval of a class action must also satisfy the factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (the "*Jones* Factors"). The factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable." *Id.*

## V.    THE SETTLEMENT PROVIDES A FAIR, ADEQUATE AND REASONABLE RESULT FOR THE SETTLEMENT CLASS

In determining whether to finally approve a class action settlement, courts must first determine that the settlement class is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of Settlement. (ECF No. 47). For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 46), this Court should grant final approval of the Settlement. *See Id.* at 19-22. The Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the *Jones* Factors.

### A.  The Settlement was Fairly and Honestly Negotiated.

 "District courts within the Tenth Circuit have found settlements to be fairly and honestly negotiated where parties have vigorously advocated their positions and where a settlement was reached through arms-length negotiations." *Lawrence v. First Fin. Inv. Fund V, LLC*, No. 219CV00174RJSCMR, 2021 WL 3809083, at *4 (D. Utah Aug. 26, 2021). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). The use of an experienced neutral mediator

also weighs in favor of a finding of non-collusiveness. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1091 (10th Cir. 2021).

The negotiations in this matter occurred at arm's length following hard fought negotiations, including a full-day mediation with the highly regarded JAMS mediator Hon. John W. Thornton (Ret.). *See* Federman Decl., ¶ 4. Indeed, despite extensive negotiations, the Parties were prepared to leave the mediation without a resolution. It was only after extensive input from the mediator and Parties that a resolution was reached.

## B. The Strength of the Plaintiffs' Case.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Snap's data security was inadequate. However, consumer class actions are complicated and unpredictable. This is particularly true for the emerging area of data breach class actions where serious questions of law and fact exist. This field of litigation is evolving, which creates considerable risk and uncertainty. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Thus, while Plaintiffs believe they have strong claims, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed and provides immediate recovery to the Settlement Class.

## C. The Risk, Expense, Complexity and Likely Duration of Further Litigation.

While Plaintiffs believe their case is strong, all cases, including this one, are subject to substantial risk. This case involves: (i) a proposed Class of roughly 60,902 individuals (each of whom may need to establish cognizable harm and causation); (ii) a complicated and technical factual background; (iii) claims in an emerging area of law; and (iv) motivated Defendants.

Plaintiffs have no doubt that Defendants will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of continuing litigation.

Although nearly all class actions involve a relatively high level of risk, expense, and complexity, this is an especially complex class. Data security incident cases of wide-spread notoriety implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in a disputed class certification setting and entirely unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

### D.  The Risk of Maintaining Class Action Status Throughout the Trial.

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10

(C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). And even though class certification was recently affirmed in part by the Eleventh Circuit in the high-profile *In re Brinker* case, the court remanded the case to clarify the predominance finding. *See Green-Cooper v. Brinker Int'l, Inc*., 73 F.4th 883 (11th Cir. 2023). Class certification through trial is never a settled issue and is always a risk for the Plaintiffs.

### E.  The Amount Offered Under the Settlement.

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement is a $1,800,000 non-reversionary common fund settlement which provides monetary compensation, free credit monitoring, and identity-theft protection services. Each Class Member was eligible to make a claim for up to $5,000 in reimbursement for ordinary out-of-pocket losses, and up to $500 in additional *pro rata* cash payments, with an additional $200 for California residents. (SA, §§ 2.3-2.3.3). Moreover, every Settlement Class Member who submits a valid claim is eligible to receive 24 months of free credit monitoring and identity-theft protection services. *Id.*, § 2.3.4. Further, all Settlement Class Members benefit from the enhanced data security practices and remedial measures that Snap has agreed to implement, which will better protect Class Members' sensitive information going forward. *Id.* § 2.4.

These are substantial benefits conferred to Settlement Class Members. Because the Settlement amount and benefits here exceed other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See, e.g., Mowery v. Saint Francis Healthcare Sys*., No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to

$280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Baksh v. IvyRehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member of out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys*., No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Chacon, et al. v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.) (data breach settlement providing up to $300 in ordinary expense reimbursements; up to $3,000 in extraordinary expense reimbursements; credit monitoring services; and equitable relief in the form of data security enhancements).

The Settlement Fund of $1,800,000 for a class of 60,902 individuals represents a value of $29.56 per Class Member, which is an excellent result compared to the vast majority of data breach settlements of a comparable size. *See e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 979 (8th Cir. 2018) (affirming approval of settlement that established a common fund of $10 million for 100 million class members where the benefits provided were reimbursement for documented losses and pro rata distribution of residual funds); *Lamie v. Lendingtree, LLC,* Case No. 3:22-cv-00307 (W.D.N.C.) (slip op.) (approving fund of $875,000 for a class of 69,142 with a value per class member of $12.66); *Gupta v. Aeries Software, Inc.*, Case

No. SA CV 20-0995-FMO (ADSx) (C.D. Cal.) (slip op.) (approving fund of $1,750,000 for a class of 98,199 with a value per class member of $17.82). *See also* Federman Decl. at ¶ 6.

In light of the difficulties and expenses Class Members would face pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is extremely favorable. *See Id.* Accordingly, this factor supports approval.

### F. The Amount of Discovery Completed.

By the time the Settlement in principle was reached, Plaintiffs and Plaintiffs' Counsel were well informed of the strengths and weaknesses of the Action. *See* Federman Decl. ¶ 5. Indeed, the Settlement was achieved only after: a thorough pre-complaint investigation that culminated in the preparation of detailed complaints, including the consolidated complaint; the review and consideration of relevant informal discovery, including discovery that provided insight into the causes and scope of the Data Incident, the geographic location of class members, and potential damages; the preparation of a detailed mediation statement that included a proposed settlement term sheet; numerous discussions with Plaintiffs concerning possible settlement terms and potential improvements to offers made by Defendant; and intense settlement negotiations. *Id.*

Although the Parties did not engage in formal discovery (which is not required for final approval in this district – *see, e.g., Gradie*, 2020 WL 6827783, at *9), the informal discovery into the circumstances and implications of the Data Breach (detailed above), along with Class Counsel's collective experience in similar types of privacy and data breach class actions, provided substantive information on the merits of the case. This key informal discovery, in conjunction with Class Counsel's honed experience in data breach cases, enabled Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds or even thousands of hours and substantial financial resources to come up to speed on the merits, risks, and value of the case.

*See* Federman Decl., ¶¶ 4-6 (ECF No. 46-2)). As courts have repeatedly recognized, "the efficiency with which the Parties were able to reach an agreement need not prevent th[e] Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017); *see also CO Craft LLC. v. GrubHub, Inc.*, 2023 U.S. Dist. LEXIS 95742 at *41-42 (D. Colo. June 1, 2023) ("In other words, this Court has applied the appropriate approval standards to account for the lack of formal discovery in this case, and the lack of formal discovery is not an outright bar to preliminary approval…. In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table "where the parties have sufficient information to make an informed decision about settlement.") (quoting *Linney v. Cellular Alaska P'ship*, 151 F.34d 1234, 1239 (9th Cir. 1998). Plaintiffs are well informed about the strengths and weaknesses of this case. Moreover, the Settlement was the result of a mediator's proposal, which was made by the Hon. John W. Thornton (Ret.)—a JAMS mediator who is very experienced in data breach class actions—after multiple candid exchanges with both Parties and a full day mediation session. *See* Federman Decl. at ¶ 4.

### G.  The Experience and Views of Counsel.

The judgment of experienced Plaintiffs' counsel also supports the finding that the Settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data incident litigation, and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are fair and reasonable considering reported average out-of-pocket expenses incurred due to a data security incident as well as to the benefits offered in other data breach settlements.

The benefits available here compare very favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel, who have litigated hundreds of data breach cases, spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. *See* Federman Decl. at ¶ 15.

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

### H.  Reaction of the Class Members.

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a total of 60,902 Class Members, only 1 Class Member requested exclusion from the Settlement Class. *See* Kamenir Decl. at ¶¶ 8-9, 18-19. Even more impressively, there have been absolutely *no* objections to any aspect of the Settlement. *Id.* Moreover, as of December 14, 2023, the administrator received 4,359 claim submissions, at least 4,287 of which represent valid claims. *Id.* at ¶ 17. The claims rate of more than 7% is a rate that exceeds other finally approved data breach settlements. Federman Decl., ¶ 15. The very positive response from the Class strongly supports final approval of the Settlement.

## VI.    <u>CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE</u>

Under the terms of the Settlement Agreement, the Parties have agreed, for the purposes of the Settlement only, to the certification of the Settlement Class, This Court has considered and

granted preliminary approval of class certification. (ECF No. 47). For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 46), which Plaintiffs incorporate here, this Court should certify the Class for purposes of final approval of the Settlement. *See* ECF No. 46 at 19-22.

### VII.    THE SETTLEMENT ADMINISTRATOR PROVIDED NOTICE PURSUANT TO THIS COURT'S PRELIMINARY APPROVAL ORDER AND SATISFIED DUE PROCESS AS WELL AS RULE 23

To satisfy due process, notice to class members must be the best practicable, which means it must be reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *See* Fed. R. Civ. P. 23(e). As outlined in detail in the supporting Kamenir Declaration, the Notice program here, and its execution, satisfied all the requirements of Rule 23(e).

The content of the Notice, as previously approved by the Court, informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through an attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand. Thus, the notice was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

On October 18, 2023, Simpluris mailed the "Short Form Notice" by U.S. first class mail to 60,902 Settlement Class Members. *See* Kamenir Decl. at ¶ 8. The form and contents of the Short

Form Notice was previously approved by this Court and provided an overview of the Settlement terms, the benefits available, the options available to Class Members, the settlement website, and toll-free number where additional settlement information could be obtained. *Id.*

After all address tracings and remailings, Simpluris successfully delivered 58,531 Short Form Notices, equating to a delivery success percentage (or "reach rate") of 96.1%.[3] *Id.* at ¶ 10. In addition to the mail notice program on October 18, 2023, Simpluris sent the Short Form Notice via email to 55,433 Class Members. *Id.* at ¶ 11. Of the 55,433 Class Members emailed, only 1,184 emails bounced back due to an undeliverable address. *Id.* In other words, while additional email notice was attempted to 91.01% of all Class Members, 97.86% of all emailed Class Members received the Short Form Notice. *Id.*, ¶ 12.  This reach rate for notice via email, in addition to the 95.48% mail notice reach rate, demonstrates the Notice program's satisfaction of due process. Simpluris, through its representative Jacob Kamenir an experienced professional in the field of providing class action notice, offers the opinion that this "reach rate" for notice exceeds necessity to satisfy due process. *Id.* Such notice complies with the program approved by this Court in its Preliminary Approval Order and is consistent with Notice Programs approved in Utah, the Tenth Circuit and across the United States. A reach rate above 95% is considered a "high percentage," and is well above the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., *Managing Class Action Litigation: A Pocket Guide for Judges*, 27 (3d Ed. 2010). The Notice reach rate easily satisfies due process requirements.

---

[3] The individual, direct, first-class mail Notice—employed here as just ***one*** of the methods of notice—is widely recognized as the gold standard and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc*., Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same).

In addition to the direct mail notice and email notice, Simpluris published a dedicated website for the Settlement with an easy to remember domain name (www.snapfinancedatasettlement.com). *Id*., ¶ 13. Relevant documents were posted on the website for Settlement Class Members to review. To date, there have been 61,597 visits to the Settlement Website. *Id*. ¶ 14. Also on October 18, 2023, Simpluris established a toll-free telephone number to allow Class Members to call for additional information, listen to answers to FAQs, speak with a live customer support specialist during regular business hours, and to leave an after-hours message to receive a call-back. *Id*. ¶ 15. There have been 1,497 calls to date. *Id*.

The combination of direct mail notice, email notice, the website, and the toll-free telephone line all served to provide the best notice practicable to this Class and satisfy the Rule 23(e) requirements.

## VIII.    **CONCLUSION**

Plaintiffs respectfully request this Court grant final approval of the Settlement, enter the proposed Final Approval Order, finally certify the Settlement Class, award Settlement Class Counsel attorneys' fees of $540,000.00, award reimbursement of litigation expenses in the amount of $9,140.20, and award Plaintiffs service awards in the amount of $2,500 each.

Date: December 19, 2023                            Respectfully submitted,

*/s/ William B. Federman*
William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

M. Anderson Berry*
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**

19

865 Howe Avenue
Sacramento, CA 95825
(916) 239-4778
(916) 924-1829 (facsimile)
aberry@justice4you.com

Brian D. Flick*
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
(513) 645-3488
(216) 373-0536 (facsimile)
bflick@dannlaw.com

*Interim Class Counsel for Plaintiffs*

Charles H. Thronson, USB 3260
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
CThronson@parsonsbehle.com

*Liaison Counsel for Plaintiffs*

Jason M. Wucetich*
**WUCETICH & KOROVILAS LLP**
222 N. Pacific Coast Hwy., Suite 2000
El Segundo, CA 90245
Telephone: (310) 335-2001
jason@wukolaw.com

A. Brooke Murphy*
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989
abm@murphylegalfirm.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878

Fax: (865) 522-0049
Email: gklinger@milberg.com

*Admitted Pro Hac Vice

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on December 19, 2023, a copy of the above pleading was electronically filed with the Clerk of Court of the United States District Court for the District of Utah, using the CM/ECF system, which will send a Notice of Electronic filing to all parties of record.

*/s/ William B. Federman*
William B. Federman